UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
LISSETTE TORRES, on behalf of herself
and on behalf of all other similarly situated
individuals,

                         Plaintiff,

      -against-                     Civ. No.: 18-cv-03644 (LGS)

CITY OF NEW YORK,                **FIRST AMENDED**
                                        **CLASS ACTION**
                                        **COMPLAINT AND**
                                        **JURY TRIAL DEMAND**

                        Defendant.
----------------------------------------------------------------------x

        Plaintiff Lissette Torres (hereinafter "Plaintiff," or "Officer Torres"), by her

attorneys, The Kurland Group, with offices at 85 Broad St., 28th Floor New York, NY

10004, on behalf of herself and on behalf of the proposed class of current and future New

York City Police Officers she seeks to represent (the "Class") complaining of Defendant's

discriminatory and retaliatory treatment against Plaintiff and Defendant's pattern and

practice of retaliation. Plaintiff alleges upon knowledge as to herself and her own acts, and

otherwise upon information and belief:

### PROCEDURAL HISTORY

1.  Plaintiff initiated the instant action by her Summons and Complaint on April

     24, 2018. (Dk. Entry 1).

2.  Plaintiff's First Amended Complaint is filed pursuant to the Court's Order of

     September 6, 2018 (Dk. Entry 25).

1

## NATURE OF THE ACTION

1.        This action is brought to remedy the discrimination Plaintiff suffered based on her sexual orientation by her employer New York City Police Department ("NYPD"), an agency of Defendant City of New York, and Defendant's retaliation against Plaintiff for complaining of discrimination to the NYPD Office of Equal Employment Opportunity ("NYPD OEEO").

2.        Plaintiff alleges herein that Defendant's acts and omissions violate Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, the New York State Human Rights Law (hereinafter "NYS HRL"), New York Executive Law §§290, *et seq.*, the New York City Human Rights Law (hereinafter "NYC HRL"), Administrative Code of the City of New York §§8-101, *et seq.*

3.        Plaintiff Lissette Torres brings this action against Defendant City of New York (hereinafter "City" or "Defendant") individually to secure monetary relief in the form of backpay, front pay, and compensatory damages caused by Defendant's discriminatory and retaliatory conduct. Torres individually alleges that Defendant's discriminated against her in the terms and conditions of her employment based on her sexual orientation, and further alleges that Defendant's acts and omissions created a hostile work environment. When Plaintiff attempted to remedy Defendant's discriminatory conduct through the departmental complaint process, Defendant retaliated against Plaintiff.

4.        Plaintiff also brings this action in her representative capacity on behalf of the Class she seeks to represent to secure declaratory and injunctive relief from Defendant's retaliatory application of NYPD OEEO policies.

2

5.        Plaintiff further alleges that Defendant, through its agency the New York City Police Department, has engaged and continues to engage in a pattern and practice of violating applicable law and NYPD policy in the administration of the NYPD OEEO, by violating its duty of confidentiality, mandatory reporting obligations, and prohibition on retaliation.

6.        The OEEO is established pursuant to obligations under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, New York State Human Rights Law (hereinafter "NYS HRL"), New York Executive Law §§290, *et seq.*, the New York City Human Rights Law (hereinafter "NYC HRL"), Administrative Code of the City of New York §§8-101, *et seq.* (collectively "Human Rights Law") to affirmatively root out discrimination within the Department and to investigate and remedy complaints of discriminatory conduct.

7.        Defendant, in contravention of these laws and policy, has violated its duty of confidentiality and investigation. Instead, Defendant has abused the EEO process by among other things, forwarding "confidential" complaints made by victims of discrimination to the Internal Affairs Bureau ("IAB") for investigation of the complaining officers while failing to discipline alleged perpetrators of discrimination.

8.        Plaintiff alleges that Defendant has also violated its mandatory obligations to report discrimination. Instead, upon information and belief, NYPD members are actively discouraged from complaining of discrimination.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. § 2000., 28 U.S.C. § 1331.

10.     This Court may exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)(2), as Defendants reside in this district and the events giving rise to Plaintiffs' claims occurred in this district.

12.     Plaintiff filed her Notice of Claim within ninety days after her claim arose upon Defendant City of New York by delivering copies of the notice to the person designated by law as a person to whom such claims may be served. Such Notice of Claim was in writing, sworn to by Plaintiff and set forth the nature of the claim, the time place and manner by which the claim arose and the damages and injuries claimed to have been sustained by Plaintiff.

13.     Following a 50-H Hearing, Defendants neglected to adjust the claims within the statutory time period. See Transcript of 50-H Hearing, attached hereto as **Exhibit A**.

14.     Torres has exhausted her administrative remedies by timely filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") resulting in an EEOC finding of probable cause to believe that Defendants' engaged in discriminatory conduct. **Exhibit B**.

15.     This lawsuit was commenced within ninety (90) days of Plaintiff Torres's receipt of her Right to Sue letter from the United States Department of Justice

("DOJ").

## JURY DEMAND

16.     **PLAINTIFF** demands a trial by jury in this action on each and every one of her claims.

## PARTIES

17.     **PLAINTIFF LISSETTE TORRES** (hereinafter "Officer Torres" or "Plaintiff") is a gay Latina woman who has served as a New York City Police Department officer for over twenty (20) years.

18.     **PLAINTIFF** is a resident of New York and at all relevant times met the definition of "employee" under all applicable statutes.

19.     **DEFENDANT CITY OF NEW YORK** (hereinafter "City") is a municipality duly incorporated under the laws of the State of New York and maintains its principle place of business at 1 Centre Street, New York, New York 10007. At all relevant times herein, Plaintiff was employed by Defendant through Defendant's agency, the New York City Police Department ("NYPD"), as a police officer. Defendant does and at all relevant times herein has met the definition of "employer" under all applicable statutes.

## STATEMENT OF FACTS

20.     Officer Torres was a dedicated member of the NYPD's 48th Precinct for over eighteen (18) years.

21.     Plaintiff enjoyed an exemplary record throughout that time and proved herself to be an officer dedicated to the Department and the community it serves.

22.     In addition to her duties as a patrol officer, Plaintiff took on leadership

roles in community engagement efforts and served as Auxiliary Police Coordinator from July 2012 to January 2017.

23.     As Auxiliary Coordinator, Plaintiff worked closely with the Executive officers of the precinct including the Commanding Officer, Executive Officer, Administrative Lieutenant, Special Operations Lieutenant, Community officers as well as staff from the Auxiliary Police Section and the community to coordinate events in the precinct and throughout the city and to recruit new Auxiliary personnel.

24.     Plaintiff was also an Auxiliary class instructor and was responsible for training new Auxiliary officers.

25.     Plaintiff was not out as gay in the workplace and only disclosed her sexual orientation to a few trusted colleagues.

26.     One such colleague was fellow 48th Precinct Officer Migdalia Chu.

27.     Plaintiff disclosed to Officer Chu in confidence that she is gay and in a committed relationship with her partner, Lisa Velez.

28.     Soon after making this disclosure, Officer Chu began publicly exhibiting offensive language and behavior towards Officer Torres regarding Torres' sexuality and Velez's gender expression.

29.     In or around June 2013, Officer Torres was with Velez, also a gay Latina female police officer, at an off-duty police social event.

30.     While at this event, Chu, Torres, and Velez were in the restroom at the same time. When Chu saw Velez leave the restroom, she stated: "you should have used the men's bathroom, bitch." Plaintiff understood this comment to refer to be a derogatory comment about Velez's gender expression and Plaintiff's romantic relationship with Velez.

31.      Upon information and belief, Supervising officer Sergeant Jessica Pabon witnessed the entirety of the altercation yet failed to report or take any remedial action to address Officer Chu's conduct.

32.      Defendant's lack of action forced Plaintiff to shield herself from this conduct by avoiding common precinct areas like the locker room. When Plaintiff was in common precinct areas with Chu, Chu would make grunting and animal noises directed at Plaintiff. Chu's conduct further threatened to out Plaintiff in her Precinct.

33.      Plaintiff brought this behavior to the attention of her supervisors. In response, the department again failed to address Chu's behavior and instead offered to move Plaintiff's locker into her office.

34.      This response caused Plaintiff further isolation and embarrassment and sent Plaintiff the increasingly clear message that the Department would not address the underlying conduct.

35.      Despite Officer Torres' efforts to shield herself from further verbal and physical attacks, in or around August 10, 2015, another altercation ensued inside the 48th Precinct while Officer Torres and Officer Chu were both on duty.

36.      Officer Chu, inside the precinct and in front of several other NYPD officers, saw Officer Torres and began making explicit grunting and animal noises and called Officer Torres "a filthy animal."

37.      Chu repeatedly yelled "go eat pussy, you lesbian bitch!" Plaintiff asserts that this attack was so threatening and disruptive that another officer, Chu's partner Officer Alcantara, was forced to respond by physically restraining Chu to prevent her from physically attacking Officer Torres.

38.     Further, Chu's comments made the Precinct aware of Plaintiff's sexuality and forced her to become out as gay on the job. Upon information and belief, there were no other openly gay officers in the 48th Precinct at this time.

39.     Plaintiff asserts that Supervising officers Lieutenant Fibus, Lieutenant Carrara, and Sargent David Pabon were all present and witnessed the August 2015 altercation, yet once again failed to take any steps to address the attack.

40.     Instead, Plaintiff's supervisors again put the onus on Plaintiff to avoid Chu's behavior.

41.     Plaintiff left the precinct to collect herself following this incident. Fibus saw Plaintiff and, after witnessing Chu's conduct, told Plaintiff to stay out of the Precinct for the remainder of the day.

42.     Upon information and belief, Chu was not given any similar directive and was not subject to any disciplinary action.

43.     In or around August 13, 2015, Officer Torres approached her superior officers Sergeant Vines and Sergeant Soto to discuss filing an EEO complaint.

44.     Sergeant Soto discredited Plaintiff's allegations and actively attempted to discourage Plaintiff from filing an EEO complaint.

45.     Despite this discouragement, Plaintiff filed an EEO complaint in or around August 13, 2015. **Exhibit B**.

46.     After being outed and filing her OEEO complaint, Plaintiff began to experience increasingly antagonistic treatment by her peers and supervisors.

47.     Previously collegial colleagues suddenly stopped speaking to or working with Plaintiff.

48.     Plaintiff's regular night-shift assignment was rescheduled without explanation to the day tour, which is paid at a lower rate than Plaintiff's usual night-shift. In addition to losing additional pay that comes with night-shift differential payment, Defendant began to schedule Plaintiff for the same shifts as Chu.

49.     The Department has used this day tour, called "All Out," for many years. Plaintiff had previously been automatically excluded from All Out duty and scheduled instead for her regular night shift.

50.     Plaintiff was not assigned to All Out duty once from July 2012 to July 2015.

51.     Following Plaintiff's OEEO Complaint, she was suddenly denied her usual night-shift and instead scheduled for All Out duty and thus forced to work with Chu.

52.     Plaintiff repeatedly requested exclusion from All Out duty. Plaintiff's exclusion, while previously routine, was denied.

53.     Plaintiff's general requests not to be scheduled for the same shifts as Chu were also ignored. Lieutenant Carrera, the supervising officer responsible for shift scheduling, responded that he "doesn't care about [Plaintiff's] personal conflict."

54.     Prior to August 2015, Plaintiff consistently worked approximately twenty-five (25) hours of overtime per month.

55.     After Plaintiff's sexuality was made public and Plaintiff filed her subsequent OEEO Complaint, Defendant began denying Plaintiff overtime.

56.     In or around January 2016 Plaintiff advised Lieutenant Carrera of her intention to retire at the end of 2017 and again expressed her request to be included in as many overtime opportunities as were available.

57.     An Officer's salary in the last year of employment has a dramatic impact on an employee's pension.

58.     As such, Plaintiff's ability to retire depended largely on maintaining her previously consistent amount of overtime hours.

59.     Despite these requests, Defendant continued to deny Plaintiff overtime.

60.     On at least one occasion, Plaintiff's request for overtime was approved and then immediately revoked.

61.     Defendant also constructively denied Plaintiff's participation in department events and community-engagement efforts. One such initiative, Harmony Day, is a community event hosted by NYPD to facilitate relationships between police officers and community members.

62.     Plaintiff was a leader of Harmony Day for several years and passionate about the event's goals. When Plaintiff realized that Chu was scheduled to represent the 48th Precinct at Harmony Day 2016, Plaintiff requested that she be put on a different assignment than Chu.

63.     Instead of honoring Plaintiff's request and her efforts to plan and implement the event, the Department relegated Plaintiff to another Precinct's station. Chu was allowed to remain with the 48th Precinct delegation.

64.     In or around December 16, 2015, Officer Torres received the OEEO's determination finding that her complaint did not "rise to the level of employment discrimination in the workplace." The decision did not include any details about an investigative process and did not specify any facts relied on in making its determination. **Exhibit B**.

65.     Upon information and belief, the OEEO did not perform a full and confidential investigation. Instead, upon information and belief, OEEO relied only on the personal opinion of Sergeant Vines in making its determination.

66.     Indeed, upon information and belief, the OEEO contacted only one witness in connection with the complaint, and failed to conduct any interview with that witness, nor take any other steps to speak with witnesses Plaintiff identified.

67.     After filing her OEEO complaint, Plaintiff was notified that she would be the subject of a GO-15 Disciplinary hearing. A GO-15 hearing is a preliminary hearing in connection with allegations of serious misconduct or corruption of an officer. It carries a host of employment consequences and can act as a basis to deny promotional opportunities, special assignments, and other benefits for the duration of an officer's career.

68.     The GO-15 hearing was issued by the Internal Affairs Bureau ("IAB") to investigate Plaintiff's participation in Officer Chu's June 2013 attack against Plaintiff.

69.     Further, Plaintiff's domestic partner Officer Velez was also called for a GO-15 hearing shortly after Plaintiff issued her OEEO complaint.

70.     Plaintiff alleges that the disciplinary action taken against herself and her domestic partner were in retaliation for Plaintiff's OEEO complaint.

71.     Officer Torres learned during her GO-15 hearing that her EEO complaint had not been kept confidential but had in fact been forwarded to the Internal Affairs Board (hereinafter "IAB") for investigation.

72.     In contrast, Chu did not receive any disciplinary action.

73.     As a result of this course of conduct, Plaintiff developed anxiety, fear for her safety and the safety of her family, and developed severe stress induced eczema,

requiring monthly doctor's visits and resulting in additional time away from work and monies lost in pay and medical bills.

74.      In or around April 2016, Plaintiff was forced to seek transfer out of the 48th Precinct to escape this treatment. Plaintiff's transfer resulted in a loss of nearly two decades of seniority in the 48th Precinct and the loss of her position as Auxiliary Police Coordinator.

75.      Plaintiff's loss of overtime in 2016 also made it impossible for Plaintiff to retire in December 2017 as she had planned.

76.      Upon information and belief, Plaintiff's experience is representative of Defendant's systemic abuse of the OEEO process. The EEO Office in its current form negligently and/or intentionally fails to enact its own policies and has instead actively works against them.

77.      Upon information and belief, NYPD officers commonly understand that discrimination complaints will not be kept confidential and will result in threats of retaliation, disciplinary conduct, and isolation from their fellow officers for even the appearance of making or participating in an OEEO complaint.

78.      This experience is so common among officers that it is routine for NYPD members to discourage victims of discrimination from filing an OEEO complaint for fear of resulting retaliation. It is a common belief that the consequences of complaining about discrimination will only worsen an officer's situation.

79.      Upon information and belief, the NYPD purposefully engages in a pattern and practice of failing to investigate charges of discrimination among its officers and violating confidentiality by using complaints as the basis for punitive and retaliatory

actions against the victims of discrimination themselves. This practice perpetuates discrimination among officers, further dissuades reporting, and creates a culture of fear, mistrust, and silence for those victimized by discrimination.

80.     Pursuant to Patrol Guide Procedure No. 205-36, supervisors are obligated to report allegations of discrimination and observations of discriminatory conduct. **Exhibit C**.

81.     Plaintiff's supervisors repeatedly violated these mandatory reporting obligations. Plaintiff's supervisors did not report Plaintiff's allegations and instead attempted to actively dissuade Officer Torres from filing her EEO complaint.

82.     EEO policy further mandates that any EEO complaint, regardless of involvement of the complaining party, be kept confidential. **Exhibit D**.

83.     When an EEO complaint is made, the EEO is directed to investigate the complaint and submit the confidential complaint to the Police Commissioner for a determination on the issue.

84.     When an officer overcomes these barriers and files a complaint, they are required to go to the very public EEO office housed in One Police Plaza among their fellow officers and superiors. This stage of the process often involves waiting, exposed, in the hall outside the EEO office or inside the glass doors of the EEO office.

85.     Defendant's systemic misuse of the EEO process has impacted the number of complaints filed and substantiated. As shown through records obtained under New York's Freedom of Information Law, complaints of discriminatory treatment, sexual harassment, hostile work environment, and retaliation are very rarely substantiated. **Exhibit E**.

13

86.     This data also shows a decrease of complaints filed over the span of years 1998-2015 and an increase in the number of these complaints disposed of through discretionary "Administrative Closing." **Exhibit E**.

87.     "Administrative Closing" is defined as: "The Deputy Commissioner, Equal Employment Opportunity deems that further investigation is unnecessary. This may include, but is not limited to: a. No sufficient facts to support a case of employment discrimination/retaliation, b. complainant has withdrawn the complaint or refused to cooperate with the investigation, c. complaint was referred to the appropriate Bureau, Command, or Unit." **Exhibit E**.

## **CLASS ACTION ALLEGATIONS**

88.     Class Representative Torres brings this action pursuant to Rule 23(a), and 23(b)(2) of the Federal Rules of Civil Procedure (FRCP) on behalf of herself and all others similarly situated.

89.     The proposed class pursuant to FRCP 23(b)(2) is defined as:

"All Police Officers currently employed or who will become employed by the New York City Police Department and subject to the Polices and Practices of the NYPD's Equal Employment Opportunity Office"

90.     Torres has standing to seek the relief sought as stated herein, as she is a member of the Class she seeks to represent and has been harmed by Defendant's unlawful practices and policies of retaliating against members who complain of discriminatory treatment to the NYPD EEO Office.

91.     Class Representative Torres seeks class-wide relief under FRCP 23(b)(2) to secure systemic reform of Defendant's policies and practices applicable to all class members.

14

92.     Numerosity is satisfied pursuant to FRCP 23(a)(1), as the Class is so numerous that joinder is impracticable. There are approximately $35,000 members of the NYPD, with several thousand NYPD academy members or individuals applying for employment with the NYPD at any given time. Joinder of all members of the proposed Class is thus impracticable and individual actions by Class members would be unduly burdensome and risk inconsistent adjudications.

93.     Further, class certification pursuant to FRCP 23(b)(2) is the superior method for the fair, just, and efficient adjudication of the class claims asserted herein. Upon information and belief, many of the proposed class members currently employed by Defendants have been victimized by Defendants' retaliatory practices, yet are unable or unlikely to bring individual claims due to financial constraints as well as fear of reprisal by Defendants.

94.     The class members share common question of law and fact, including but not limited to: (1) whether Defendant has deprived members of the class the right to be free from discrimination in employment on the basis of engaging in protected activity; (2) whether the policies and practices of Defendant and NYPD's OEEO unlawfully deprives class members of their right to seek redress from discrimination; (3) whether Defendant's conduct and the practices of NYPD's OEEO as currently constituted represents a deprivation of the rights guaranteed to class members by federal, state, and local law.

95.     The claims of Plaintiff as Class Representative are typical of those of members of the class she seeks to represent. Plaintiff, like all other class members, is subject to Defendant's policies and practices, and has suffered harms typical of the harms suffered by class members, including the lack of a confidential process to complain of

discrimination, retaliation for seeking redress from discrimination, and a rampant NYPD culture of discrimination.

96.     The legal theories under which the named Plaintiff seeks declaratory and injunctive relief are the same or similar to those on which all members of the class will rely.

97.     The named Plaintiff will fairly and adequately protect the interests of the class, and has no conflict of interest with members of the proposed class. Class Representative Torres is employed by the NYPD, has been subject to Defendant's retaliatory practices, and has been adversely affected by such practices.

98.     Certification of the proposed class pursuant to Rule 23(b)(2) is warranted because Defendant has acted on grounds generally applicable to the class, thereby making class-wide declaratory and injunctive relief appropriate.

99.     Defendant knew or should have known of the retaliatory treatment suffered by the NYPD officers availing themselves of the OEEO complaint process and the unlawful consequences these officers faced as a result of doing so.

100.     All injunctive relief sought is applicable to the 23(b)(2) Class as a whole.

**AND AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANT
FOR VIOLATIONS OF TITLE VII
(CLASS CLAIM)
RETALIATION**

101.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

102.     Plaintiff brings this Count on behalf of the Class she seeks to represent.

103.     Defendant, through its agency NYPD, at all relevant times has set and carried out the OEEO policies and practices alleged herein and is a covered employer as defined by Title VII.

104.     Defendant has violated Title VII by retaliating against NYPD members who report discrimination while failing to investigate or take any steps to remedy alleged discrimination.

105.     The acts, practices, and policies of Defendant, as set forth above, constitute a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*

**INDIVIDUAL COUNTS**

**AND AS FOR THE SECOND CAUSE OF ACTION
AGAINST DEFENDANT FOR VIOLATIONS OF TITLE VII
SEXUAL ORIENTATION DISCRIMINATION**

106.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

107.     Defendant has discriminated against Plaintiff on the basis of her sexual

17

orientation by subjecting her to disparate terms and conditions of employment in contrast to her straight counterparts.

108.      The acts, omissions practices, and policies of Defendant, as set forth above, constitute a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq*.

109.      As a result of Defendant's conduct alleged herein, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost employment opportunities, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

## AND AS FOR THE THIRD CAUSE OF ACTION AGAINST DEFENDANT FOR VIOLATIONS OF TITLE VII RETALIATION

110.      Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

111.      Plaintiff exercised her protected right to complain of discrimination by complaining to supervisors and issuing a formal complaint with the office tasked with investigating allegations of discrimination.

112.      In response to engaging in this activity, Plaintiff was subjected to adverse employment actions including disciplinary action, denial of overtime compensation, denial of fringe benefits, and constructively forced to transfer.

113.      The acts, omissions practices, and policies of Defendant, as set forth above, constitute retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq*.

114.     As a result of Defendant's conduct alleged herein, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost employment opportunities, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

## AND AS FOR THE FOURTH CAUSE OF ACTION AGAINST DEFENDANT
## FOR VIOLATIONS OF TITLE VII
## HOSTILE WORK ENVIRONMENT

115.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

116.     Defendant's acts and omissions, as set forth above, cumulatively created an abusive and hostile work environment that altered the terms and conditions of Plaintiff's employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq*.

117.     As a result of Defendant's conduct alleged herein, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, lost employment opportunities, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

## AND AS FOR THE FIFTH CAUSE OF ACTION
## FOR VIOLATIONS OF NEW YORK STATE HUMAN RIGHTS LAW

118.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

119.     Defendant's acts, policies, and practices described herein constitute ongoing discrimination against Plaintiff on the basis of her sexual orientation, in violation

19

of the New York State Human Rights Law, New York Executive Law §§290, *et seq.*

120.     Plaintiff is a member of a protected class as defined by New York Executive Law § 296.

121.     Plaintiff has suffered damages, including but not limited to loss of income, loss of promotional opportunity, and loss of other employment benefits and have suffered and continue to suffer distress, humiliation, great expense, embarrassment and damage to her reputations, as a result of such deprivation. The full extent of these damages are not yet known.

122.     The actions and inactions of Defendants in depriving Plaintiff of her statutorily protected rights was willful and malicious. As a result of Defendants' acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

**AS FOR THE SIXTH CAUSE OF ACTION**
**NEW YORK STATE HUMAN RIGHTS LAW**
**HOSTILE WORK ENVIRONMENT**

123.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

124.     Defendants acts, practices, and policies, as set forth above, unreasonably interfered with Plaintiff's employment and constitute a hostile work environment in violation of the New York State Human Rights Law, New York Executive Law §§290, *et seq.*

125.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continues to suffer such injuries, including but not limited to loss of wages, salaries and benefits, the full extent of which is not yet known.

## AS FOR THE SEVENTH CAUSE OF ACTION
## NEW YORK STATE HUMAN RIGHTS LAW
## RETALIATION

126.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

127.     Defendant retaliated against Plaintiff for engaging in the protected activity of filing an ostensibly confidential complaint with the Equal Employment Office, in violation of New York State Executive Law.

128.     Defendant retaliated against Plaintiff in the form of disciplinary actions against Plaintiff and her domestic partner, withdrawal of employment opportunities such as overtime and regular shifts, and alienation from Department events and activities.

129.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## AS FOR THE EIGHTH CAUSE OF ACTION
## VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW
## DISCRIMINATION

130.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

131.     Defendant's acts and omissions, as set forth herein, constitute discrimination against plaintiff on the basis of her sexual orientation, in violation of the New York City Human Rights Law (hereinafter "NYC HRL"), Administrative Code of the

21

City of New York §§8-101, *et seq*.

132.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## AS FOR THE NINTH CAUSE OF ACTION
## NEW YORK CITY HUMAN RIGHTS LAW
## RETALIATION

133.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

134.     Defendant's acts and omissions, as set forth herein, constitute retaliation in violation of the Administrative Code of the City of New York.

135.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## AS FOR THE TENTH CAUSE OF ACTION
## NEW YORK CITY HUMAN RIGHTS LAW
## HOSTILE WORK ENVIRONMENT

136.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

137.     Defendant's acts and omissions as set forth herein unreasonably altered the conditions of Plaintiff's employment and constitute a hostile work environment in violation of the Administrative Code of the City of New York.

138.     As a direct result of the actions and inactions of Defendants, Plaintiff

has suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.


## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grants the following relief:

A.  Certify this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure and certify the named Plaintiff as class representative;

B.  Enter a class-wide judgment declaring the acts and practices of Defendant are in violation of the laws of the United States, State of New York, and City of New York;

C.  Issue a permanent injunction requiring Defendant to abolish its retaliatory NYPD OEEO practices and requiring Defendant to:

    a.  take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

    b.  implement a confidential EEO process with oversight by an independent body created for that purpose;

D.  Award Plaintiff all earnings together with all other benefits to which Plaintiff is entitled, including but not limited to wages, salaries, pension, bonuses, and other lost benefits, with prejudgment interest;

E.  Award Plaintiff compensatory damages;

F.  Award interest as allowed by law;

G.  Award Plaintiff reasonable attorneys' fees, expenses and costs of this proceeding;

and

H.  Such other and further relief as this Court deems just and proper.

Date:   September 27, 2018
          New York, NY

                                                    ~//s//~
                                          Yetta G. Kurland, Esq.
                                          THE KURLAND GROUP
                                          *Attorneys for Plaintiff*
                                          85 Broad Street, 28th Floor
                                          New York, New York 10004
                                          (212) 253-6911 (t)
                                          (212) 614-2532 (f)
                                          kurland@kurlandgroup.com