# EXHIBIT B

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ___ FEPA<br>_X_ EEOC | |

New York State Division of Human Rights and EEOC
*State or local Agency, if any*

| Name (indicate Mr, Ms, Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Lissette Torres | [redacted] | [redacted] |
| Street Address | City, State and ZIP Code | |
| [redacted] | [redacted] | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| New York Police Department | 50,000+ | (646) 610-5000 |
| Street Address | City, State and ZIP Code | |
| 1 Police Plaza Path | New York, New York 10007 | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| City of New York | 250,000+ | (212) 669-3916 |
| Street Address | City, State and ZIP Code | |
| One Centre Street | New York, New York | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

_X_ RACE  ___ COLOR  _X_ SEX  ___ RELIGION  ___ NATIONAL ORIGIN

_X_ RETALIATION  ___ AGE  ___ DISABILITY  _X_ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest

_X_ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attached extra sheet(s))*:

See attached Affidavit, which outlines claims of discrimination based on gender, race, and sexual orientation pursuant to Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, New York Executive Law, Article 15, § 290, *et seq.*, New York City Human Rights Law, Administrative Code and Charter, § 8-101, *et seq.*, and other relevant statutes.

[RECEIVED stamp: NEW YORK DISTRICT OFFICE 2016 JUN -3]

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>[signature: Lissette Torres] |
| 6-3-2016<br>Date        Charging Party Signature<br>[signature: Lissette Torres] | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)*<br>YETTA G. KURLAND<br>NOTARY PUBLIC, STATE OF NEW YORK<br>NO. 01KU6035642<br>QUALIFIED IN NEW YORK COUNTY<br>COMMISSION EXPIRES 07/03/20__ |

UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
-------------------------------------------------------------------- x
LISSETTE TORRES,

                      Claimant,

           -against-

THE CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT; and JANE AND JOHN
DOE MEMBERS OF NEW CITY YORK POLICE
DEPARTMENT ## 1-10

                      Respondents.
-------------------------------------------------------------------- x

**AFFIDAVIT IN SUPPORT OF EEOC CHARGE**

EEOC Charge:

STATE OF NEW YORK  )
                             ) ss:
COUNTY OF NEW YORK  )

I, LISSETTE TORRES, being duly sworn, depose and say under the penalties of perjury:

1. The statements made in this Affidavit are true as to the best of my knowledge and belief.

2. My name is Officer Lissette Torres and I currently reside at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

3. I am hereby making a charge of discrimination, hostile work environment, failure to investigate, and retaliation based on my gender, race, as well as sexual orientation, in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the New York State Human Rights Law, New York Executive Law, Article 15, § 290, *et seq.*, and the New York City Human Rights Law, Administrative Code and Charter, § 8-101, *et seq.*, as well as violations of employment policies and procedures against THE CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT; and JANE AND JOHN DOE MEMBERS OF NEW CITY YORK POLICE DEPARTMENT ## 1-10 (hereinafter "Respondents").

4. I am a gay Latina woman.

5. I have been a New York City Police Officer for 18 years. I am stationed at the ▮th Precinct located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and have been for the past 17 years.

6. During my time at the ▮th Precinct, I knew and was friendly with Officer Maggie Chu. I disclosed to Officer Chu that I was gay. Soon after Officer Chu began publicly exhibiting offensive behavior and language relating to me and my sexual orientation.

7. In or around June 2013, I was with my domestic partner, Officer Lisa Velez, (hereinafter "Partner"), also a gay Latina female police officer, at an event. We were both off-duty.

8. While at the event, Police officer Maggie Chu was in the restroom at the same time as myself and my Partner. When my Partner left the restroom, Officer Chu made a pejorative comment stating that my partner should have to use the men's restroom (as opposed to the women's restroom). Similar biased attacks continued, escalating into yelling and pushing.

9. Sergeant Jessica Pabon was present in the restroom at this time, and witnessed these attacks. Yet, despite being our supervisor, Sgt. Pabon failed to take any remedial action or address Officer Chu's discriminatory conduct.

10. It became clear to me that Officer Chu would not be reprimanded for this behavior, and so to protect myself, I made every effort to avoid Officer Chu, both professionally and personally.

11. On August 10, 2015, however, another altercation occurred at my Precinct between myself and Officer Chu in front of several other members of the NYPD which caused me tremendous humiliation anxiety and distress. On that day Officer Chu made explicit sexually based noises and language while in passing and called me "a filthy animal." We began to argue and she repeatedly yelled "Go eat pussy, you lesbian bitch!"

12. The attack was so substantial that Officer Chu's partner, Officer Alcantara had to hold Officer Chu back physically to prevent her from attacking me.

13. During this incident, Lieutenants Febus and Carrara as well as Sgt. David Pabon were also present, yet once again, no one took any steps to address these biased attacks and no disciplinary action has been initiated to date against Officer Chu. Nor have any steps been taken to date to protect me from this hostile work environment. It became clear to me that the NYPD was not adhering to its obligations to address discriminatory mistreatment in the workplace. Not only did it fail to investigate, but it failed to address the situation.

14. Because of this, and the reality that I could not rely on my supervisors or the department to protect me against the ongoing bias attacks from Officer Chu I decided I needed to file

a complaint with the Equal Employment Office ("EEO"). I felt I could not continue to simply try to ignore the situation and go on having to endure such unfettered derogatory treatment and hostile work environment.

15. Therefore, on or about August 13, 2015, I discussed filing a complaint with my superior Sgt. Vines. Rather than take seriously my concerns, Sgt. Vines actively worked to discourage me from filing a complaint, claiming nothing improper had happened.

16. Despite this, because I felt I had no other options, I filed a complaint with the NYPD's Equal Employment Opportunity office (hereinafter "EEO") on August 13, 2015. The complaint is attached hereto as **Exhibit A**.

17. Almost immediately after filing the EEO complaint, however, I began experiencing increased hostility and isolation in my work environment as other officers, in addition to Officer Chu, took steps to ostracize me.

18. I believe this was a retaliatory response caused by my having filed a complaint with the EEO Office regarding the bias treatment I experienced. It was especially concerning because I was led to believe that such complaints would be held confidential.

19. The retaliatory treatment became so pronounced and unbearable that despite working there for over 17 years, I began seeking a transfer out of the 48th precinct.

20. On December 16, 2015 I received a "decision" from the EEO office. The decision abruptly informed me that my complaint did not "rise to the level of employment discrimination in the workplace." This decision is attached hereto as **Exhibit B**. Yet, in this same decision,

I was informed that Officer Chu received a letter of instruction regarding the incident and was referred to the Commanding Officer. Moreover, it did not state any facts relied upon in making this determination, and failed to state a cause as to why my complaint did "not rise to the level" of discrimination.

21. Further, I do not believe any investigation was conducted and it seems as though the decision relied only on Sgt. Vine's personal opinion, who also, upon information and belief never investigated my complaint. It is also my understanding that other than one witness to the August 14, 2015 incident being contacted concerning the complaint, no further investigatory steps were taken. Further, the appointment to meet with that witness was cancelled, and the witness was not even interviewed.

22. I have heard from many other Latina, women, and gay officers that they too have attempted to complain about bias or discrimination only to have the EEO Office similarly discount or ignore their complaints, and the Department punish them for having complained in the first place. This belief is so pervasive that it is common advice not to file a complaint with the EEO office for fear of getting "jammed up" as a result of doing so.

23. It seems especially cynical that NYPD officers like myself, who uphold the law and protect others' civil rights, do not have the same protections within our own Department, and instead face punishment and retaliation for seeking the protections under the law to protect against biased mistreatment. The City claims to be interested in protecting the civil rights of all New Yorkers, yet it allows this pattern and practice of failure to investigate and retaliation for complaining to go unchecked within its police department.

24. Whether or not my claim was valid, and whether there is a wider problem with discrimination regarding Latino, female, or gay officers in the Department, a legitimate investigation should have taken place, and officers should not fear retaliation and retribution for filing a complaint of discrimination with the EEO office. That an investigation did not take place and that instead I was retaliated against in my case underscores the valid fear that I and other officers share, namely, that when we need the help and protection of the NYPD to protect our civil rights, we are ignored, and retaliated against for daring to complain in the first place.

25. Even more concerning than the NYPD's failure to investigate, is that I believe the NYPD took purposeful and affirmative steps, misusing resources and information, to punish me for having filed a complaint with the EEO.

26. In specific, it was soon after the EEO determination that both my Partner, and I were suddenly summoned to separate GO-15 hearings regarding separate incidents that seemed random and suspicious as to timing. A GO-15 is a preliminary hearing in connection with allegations of serious misconduct or corruption for a police officer within the NYPD. This is an adverse employment action and considered a disciplinary action. It sent a clear message to me that I was in trouble and I believe it was in direct response to my having filed a complaint with the EEO.

27. I learned during the GO-15 hearing that the EEO had taken my confidential complaint and determination and forwarded it to the Internal Affairs Board (hereafter "IAB") for investigation. This further confirmed my fear that rather than take my complaint of bias and discrimination seriously and protect it as confidential, the NYPD used it as a basis to

punish and retaliate against me, actively looking for reasons or pretext to take adverse action against me.

28. My GO-15 hearing purported to address the physical altercation in June of 2013, almost 3 years ago, which I cited in my EEO complaint (the first bias attack from Officer Chu). The IAB suggested I violated NYPD policy by my actions in this incident, which of course I did not. More importantly, if this incident required investigation it should have happened 3 years ago. This is simply pretext to try to punish me for having complained.

29. Although I believed that my Partner's hearing would be regarding the same issue, I was shocked to learn that her GO-15 hearing, on the same day, was based on an entirely different pretense, just as questionable, but related to her association with a family member, which again could have and should have been brought up at a much earlier time if there was a real concern. This was not only suspicious timing but a suspicious pretext to GO-15 her for.

30. As of the date of this filing, I still do not know the actual status or the ultimate outcome, if any, of my GO-15 hearings that took place in January 2016, or my Partner's. My Partner has also been subjected to an internal investigation which I also believe is further retaliation.

31. The EEO Office not only dismissed my complaint without adequate investigation, but quickly forwarded it to a disciplinary committee, the IAB, whereby it was my actions that would be scrutinized. As the victim of bias and derogatory remarks in the workplace, this course of action by the NYPD served to make me feel even more vulnerable, threatened

and alone. It also, I believe exposes a pattern and practice of the NYPD to punish rather than protect those of us who are in protected classes as gay, female or Latina.

32. It is my belief that the NYPD failed to properly address or investigate my complaint of discrimination, hostile work environment and bias treatment at the hands of my coworker. It is also my belief that instead, it instigated retaliatory actions against both my Partner and I for daring to have made a formal complaint in the first place.

33. As often referred to as the 'blue wall of silence' officers are encouraged not to criticize or complain about the NYPD. I am not the only one who has faced the Department's refusal to take seriously or investigate complaints of hostile work environment and/or discrimination, nor am I the only one who has experienced the discouragement and dissuading by supervisors to complain about discrimination. I am also far from the only one who has experienced retaliation, retribution and punishment for daring to complain to the EEO of discriminatory mistreatment towards members of the NYPD. I believe the City and NYPD has engaged in a pattern and practice of denying, covering up, failing to investigate, and then retaliating and punishing officers who have made complaints of discrimination. Rather than investigate or remedy bias or discrimination there is an unwritten policy of punishing those who dare to speak its name.

34. The Department both explicitly and complicity discourages members from filing EEO complaints and penalizes those who make complaints thereby promoting a culture of fear and greater discrimination. Those who perpetrate discrimination know that they will not be punished. Those who are its victims know that if they complain, they will be the ones punished. As such this creates an environment that encourages hostile work environments

discourages non-discriminatory work environments, and creates an atmosphere of fear and retaliation, causing anxiety, despair and distress among its gay, female and non-white officers.

35. Further, the failure to maintain an adequate and effective complaint review system leaves officers who need the protections of Human Rights Laws and Title VII with no voice, and no avenue for redress or protection.

36. Upon information and belief, the NYPD's EEO office is widely viewed by officers as *not* serious, effective, or viable as a vehicle for addressing complaints of discrimination. Much the opposite, members of the NYPD feel they will get in trouble or be punished if they complain.

37. After submitting a FOIL request for statistical information regarding the number of complaints and the corresponding amount of determinations marked as substantiated, substantiated in part, or unsubstantiated, the NYPD responded that it would require 90 *business days* to respond to the request. I requested this information because I feel strongly this statistical information will show the EEO office does not properly handle the complaints that are filed by members and discourages members from filing. This amount of time, roughly 5 months, the NYPD states it needs, is unconscionable for such a simple request for records within the NYPD's ownership and control.

38. Moreover, I believe the NYPD has no intention of turning these records over as it has already been 78 business days since the request was received and the NYPD has turned nothing over. I ask that a negative inference to be drawn from this.

39. As a direct result of the actions and inactions of Respondents, I have suffered injuries and damages and continue to suffer such injuries, including embarrassment, humiliation, emotional distress, mental anguish and injury to my employment opportunities for advancement and promotion. I have also suffered deprivation of civil liberties, and loss of professional reputation. Further, this is an endemic problem that is impacting all officers who should be protected by local state and federal civil rights statutes, including but not limited to race, gender and sexual orientation, like myself.

40. I am forced to take legal action to recover the damages I have suffered from this discriminatory treatment, including hostile work environment, failure to investigate along with retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, New York State Human Rights Law, New York Executive Law, Article 15, § 290, *et seq.*, and New York City Human Rights Law, Administrative Code and Charter, § 8-101, *et seq.* as well as violations of employment policies and procedures.

WHEREFORE, I hereby demand the following:

a. Declaring that the acts and practices complained of herein are violations of Title VII, New York State Human Rights Law, and New York City Human Rights Law;

b. Directing RESPONDENTS to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

c. Directing RESPONDENTS to make me whole, as I would be but for RESPONDENTS' unlawful conduct, including all earnings and promotions I would

have received but for RESPONDENTS' unlawful conduct, including, but not limited to, wages, salaries, pension, bonuses, and other lost benefits;

d. Directing RESPONDENTS to pay an additional amount as compensatory damages for my pain and suffering;

e. Directing RESPONDENTS to pay an additional amount as punitive damages for their willful and/or reckless disregard for my statutorily protected rights;

f. Awarding interest as is allowed by law;

g. Awarding reasonable attorneys' fees and costs; and

h. Granting such other and further relief as is just and proper.

Dated: June 2, 2016
New York, NY

_____
LISSETTE TORRES

Sworn to before me on this
2nd day of June, 2016

_____
Notary Public

YETTA G. KURLAND
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01KU6035642
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 02/28/2018

# EXHIBIT A

# DEPUTY COMMISSIONER EQUAL EMPLOYMENT OPPORTUNITY
## COMPLAINT OF EMPLOYMENT DISCRIMINATION
PD 413-150 (Rev. 06-14)

**DO NOT WRITE IN SHADED AREAS**

### COMPLAINANT INFORMATION

| Name | Rank/Title | Tax Registry No. | Date Entered Dept. |
|---|---|---|---|
| Lissette TORRES-Quasro | PO | | 12-7-97 |

Address: [redacted]    Home Tel. No.: [redacted]

Date in Present Rank/Title: 12-7-97    Assigned Command: [redacted]    Command Telephone No.: [redacted]

When did the Alleged Action Occur? Date: 8-10-15   Time: 1530-1540
Location of the Alleged Action: [redacted]

Were There Witnesses To The Discrimination? ☒ Yes ☐ No
If Yes, Give Name Rank/Title: PO Christopher Alcantara   PO Tamiko Williams

Did You Report This To Anyone Else? ☐ Yes ☒ No

Have You Filed This Charge With a City, State or Federal Agency? ☐ Yes ☒ No

### RESPONDENT INFORMATION

1. Respondent's Name: Migdalia Chu (Maggie)   Rank/Title: PO   Command: [redacted]
2. Respondent's Name:    Rank/Title:    Command:

---

In the space below, explain how you were discriminated against and/or how other persons were treated differently. If others were treated differently, identify them. This statement may be amended to correct mistakes or omissions. Also indicate what corrective action you want taken. You may use an extra sheet of paper, if necessary.

On 8-10-15 PO Migdalia (Maggie) Chu did make derogatory statements in regards to my sexual preference inside of the 48 pct loud enough for everyone to hear. It is not the first time PO Chu has made derogatory statements against homosexuality, first incident occured 6-20-2013 and ever since then she has been antagonizing to me to where I feel she wants to jam me up. I would like for DCEEO investigate this matter and recommend disciplinary actions.

NOTE: READ AND SIGN REVERSE SIDE OF THIS FORM

EXHIBIT B



POLICE DEPARTMENT
Deputy Commissioner, Equal Employment Opportunity
One Police Plaza, Room 1204
New York, NY 10038
(646) 610-5330

## CONFIDENTIAL

December 16, 2015

Lisette Torres-Ocasio

Re: DCEEO Case # 141s.15

Dear Police Officer Torres-Ocasio:

    An investigation of an allegation you reported on August 11, 2015, carried under DCEEO Case # 141s.15, has been completed. You informed the investigating officer, Sergeant Jason Vines, that you were subjected to a disparaging remark in the workplace. Sergeant Vines informed you that although the investigation did not rise to the level of employment discrimination under Title VII of the Civil Rights Act of 1964, or applicable state or local laws, Police Officer Migdalia Chu was reinstructed regarding NYPD EEO Policy and being professional in the workplace. A copy of the letter of instruction shall remain a permanent record in this office. Furthermore, the matter was referred to the Commanding Officer, 48th Precinct, as a confidential communication for appropriate attention and further corrective action to preclude a reoccurrence.

    You are invited to comment on the disposition of your complaint and to evaluate the EEO process. Your comments, if any, shall be documented in the DCEEO case file and shall be brought to my attention. In addition, you are invited to complete and return the enclosed *EEO Complainant Questionnaire* to this office.

    As stipulated in Patrol Guide procedure 205-36, you have the right to file an employment discrimination complaint with an external agency. If you have any questions, my staff and I would be happy to assist you by calling (646) 610-5330.

Very truly yours,

Neldra M. Zeigler
Deputy Commissioner
Equal Employment Opportunity

*RETALIATION IS PROHIBITED*
COURTESY • PROFFESSIONALISM • RESPECT



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

| Charging Party<br>Ms. Lissette Torres<br><br>**Charging Party's Attorney**<br>Attn.: Ms. Yetta Kurland, Esq.<br>The Kurland Group<br>160 Broadway – East Building, 11th Floor<br>New York, NY 10038 | Respondent<br>Attn.: Steven Drennen, Esq.<br>The City NY Police Department<br>Legal Bureau<br>One Police Plaza, Room 1406<br>New York, NY 10038 |
|---|---|

## DETERMINATION
EEOC Charge #: 520 - 2016 – 03127

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII). Respondent ("The City of New York Police Department") is an employer within the meaning of Title VII. All requirements for coverage have been met.

Lissette Torres ("Charging Party"), a Latina police officer, asserts that she was subjected to lewd sexual remarks and taunts based on her sexual orientation and race / national origin from an Asian female police officer, witnessed by two members of Respondent's management. Charging Party complained of harassment to the internal EEO office, referencing bad blood between the two women since a previous altercation of a similar nature some two years earlier (June 2013). Charging Party claims to have suffered from a hostile work environment based on her gender-female, sexual orientation and in retaliation for having engaged in protected activity. The internal investigation characterized the more recent incident of August 10, 2015, as a "disparaging remark" that did not rise to the level of discrimination and reported that a "letter of instruction" was issued to the alleged harasser. However, the matter was referred for further inquiry as a disciplinary issue, demonstrating that discrimination against Latina and gay women is overlooked by the NYPD, according to the charge.

Respondent denies that Charging Party was discriminated against. In its defense, Respondent asserts that Charging Party, who is gay, is not a member of a protected class. Respondent further asserts that she was not a victim of any adverse action, and that the events of which she complained are isolated incidents. Nevertheless, Respondent investigated the events, with the result that the harasser was subjected to corrective action regarding workplace discrimination. A separate investigation of the earlier incident resulted in "minimal" discipline for both parties with no negative effect on the terms and conditions of their employment.

Contrary to Respondent's assertions, sexual orientation is protected by Title VII, which covers Charging Party's claims of a hostile work environment based on her status as a gay Latina female. Respondent does not deny that Charging Party was the object of insults and graphic epithets regarding her sexual orientation on the part of her co-worker on two occasions, prompting physical altercations in both instances. The harasser's insults expressed explicit discriminatory attitude and intent and were not merely "derogatory," as Respondent styles them. Respondent addressed the "conduct" with mild reprimands but failed to address the discriminatory motivation underlying it. Respondent's position does not withstand scrutiny. Therefore I conclude that Charging Party was a victim of sex discrimination and of unlawful retaliation for engaging in the protected activity of complaining internally, in violation of Title VII of the Civil Rights Act of 1964, as amended.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26). Respondent and its attorneys will receive a letter outlining the proposed terms of conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to the aggrieved persons and the Commission.

On Behalf of the Commission:

Kevin J. Berry
District Director

Dated:   APR 17 2017