UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

LISETTE TORRES, individually and on behalf of
all similarly situated individuals,

                                    Plaintiff,

              -against-

CITY OF NEW YORK,

                                    Defendant.

--------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/18/2020
```

**OPINION AND ORDER ON
ATTORNEYS' FEES APPLICATION
FROM PLAINTIFF IN CONNECTION
WITH SETTLEMENT**

**18-CV-03644 (LGS) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

        The parties in this case reached a settlement on November 4, 2019.  Because they could

not reach agreement on attorneys' fees, as part of the settlement, the parties agreed to submit

the issue of attorneys' fees to the Court for resolution.  Plaintiff Lisette Torres seeks attorneys'

fees in the amount of $759,760.50 and costs in the amount of $18,014.02.[1]  (ECF Nos. 129 &

138.)  The Court has reviewed the application and, for the reasons set forth below, awards

Plaintiff attorneys' fees in the amount of $289,859 and costs in the amount of $17,193.32.

## BACKGROUND

        Lisette Torres is a police officer with the New York City Police Department ("NYPD").

Torres filed this employment discrimination action on April 24, 2018, claiming that she was

discriminated against and harassed on the basis of her sexual orientation in violation of federal,

state and city law.  Plaintiff also claimed that she was retaliated against after reporting the

---

[1] Plaintiff's reply brief arrives at a total for the fees and costs of $777,794.52, which appears to be an error, as the Court's computation results in a total of $777,774.52.

discrimination and harassment to the NYPD's Office of Equal Employment Opportunity

("OEEO") in violation of federal, state and city law.  The alleged retaliation including denying

her overtime and improperly subjecting her to an investigation by the Internal Affairs Bureau

("IAB") and a GO-15 disciplinary hearing.

Plaintiff first retained counsel in connection with the GO-15 hearing.  Already

contemplating a lawsuit at that time, her counsel conducted an investigation that included

serving Freedom of Information Law ("FOIL") requests to collect information about OEEO

statistics.  The FOIL requests were denied, leading Plaintiff's counsel to file an action in New

York State Supreme Court under New York CPLR Article 78 to compel production of the OEEO

records.

Also in contemplation of filing this lawsuit, Plaintiff's counsel filed a charge of

discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and

prepared and served a Notice of Claim on New York City (the "City").  The EEOC conducted an

investigation of the charge and ultimately issued a determination finding probable cause to

believe the Plaintiff was a victim of sexual discrimination and retaliation in violation of Title VII

of the Civil Rights Act of 1964, as amended ("Title VII").  In accordance with EEOC procedures,

the charge was referred to the United States Department of Justice ("DOJ") for conciliation.

The conciliation process failed, and the instant lawsuit followed.

Because Plaintiff's initial complaint failed to state plausible claims of discrimination and

harassment, the Court permitted her to file a First Amended Complaint.  Believing the claims

still were not plausible as repleaded, Defendant moved to dismiss the First Amended Complaint

in part, which the Court granted, dismissing Plaintiff's claims of discrimination and hostile work environment without prejudice to replead a second time.

The Court stayed discovery on the putative class claims but ordered discovery to proceed on Plaintiff's individual claims.[2]  There were a number of disputes requiring meet-and-confer sessions among the attorneys and, in some cases, Court resolution.  The parties also conducted a number of depositions.  After discovery was completed on Plaintiff's individual claims, a trial was scheduled for June 10, 2019.  The parties then met with the undersigned to discuss settlement.  However, they were not able to reach settlement and, thus, prepared various pre-trial submissions in advance of trial.

In the weeks leading up to the trial, the parties continued to discuss settlement privately and finally reached a settlement in principal on May 24, 2019.  Disputes again arose concerning the language in the settlement agreement, necessitating several more court conferences.  On November 4, 2019, at a conference before the undersigned, the parties finally reached a full and final resolution and signed a formal settlement agreement.  The settlement provided that Plaintiff was entitled to make an application for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

Plaintiff's counsel states that they spent 1,284.15 hours of attorney time litigating this matter from the initial investigation phase through December 31, 2019, equating to $753,465.23.  They spent another 9.55 hours of attorney time between January 1 and March

---

[2] After review of the First Amended Complaint, the Court also stayed discovery on Plaintiff's claims of discrimination and hostile work environment (*i.e.*, the claims that were dismissed pursuant to Federal Rule of Civil Procedure 12(b)).

31, 2020 on their fee application, equating to $6,295.25.  Costs through December 31, 2019 were $17,969.93 and 2020 costs were $44.09.

The lead attorney on this matter is Yetta Kurland, founder of the firm the Kurland Group, where she is a partner.[3]  The Kurland Group specializes in civil rights litigation with a focus on LGBTQ rights and employment discrimination.  Ms. Kurland graduated from Brooklyn Law School in 1997 and has held various leadership positions in the bar, including co-chair of the New York County Lawyers Association on LGBT Issues, Vice President of the New York City Chapter of the National Lawyers Guild, and has been a member of the LGBTQ Rights Committee of the New York City Bar Association.  Ms. Kurland's proposed rate is $695 per hour.

Erica Healey-Kagan, who recently made Junior Partner at the Kurland Group, also worked on this matter.  She is a 2008 graduate of Brooklyn Law School, after which she received a post-graduate fellowship at the New York Civil Liberties Union before joining a predecessor firm of the Kurland Group.  She too has focused her practice on civil rights matters, particularly involving LGBTQ rights.  She is a member of the Advisory Board of the LGBTQ Law Project at the New York Legal Assistance Group, has served as a member of the LGBTQ Rights Committee of the New York City Bar Association, and is active in other bar associations as well.  Ms. Kagan's proposed rate on this matter as Counsel is $625 per hour, and as a Junior Partner is $650 per hour.

Kathleen Cullum and Brian Jasinski are Junior Associates who worked on this matter.  Ms. Cullum is a 2016 graduate of Indiana University Maurer School of Law.  Her practice too has focused on civil rights litigation.  Mr. Jasinski is a 2015 graduate of Touro College Jacob D.

---

[3] The Kurland Group has two predecessor firms where Ms. Kurland also served as a name partner.

Fuchsberg Law Center. The rate proposed for both Ms. Cullum and Mr. Jasinski is $450 per hour. Although a number of other attorneys worked on the case, no information about those individuals' education and experience was provided to the Court—only their graduation dates from law school (if applicable) and title were provided.[4]

The $18,014.02 in costs for which Plaintiff seeks reimbursement consist of copying and printing costs, costs for legal research services, costs of mailings (including express mail), court filing fees, travel costs, cost of meals, Pacer costs, medical records processing fees, process server fees, court reporter and transcript fees, and electronic/computer storage fees.

In support of the motion, Plaintiff submitted a declaration from Ms. Healy-Kagan including information about the personnel who worked on the matter and an invoice reflecting time spent by various attorneys and break-out of costs. The time records reflect some billing increments of 1/10th of an hour and some that appear to be in 1/4th of an hour. The records do not appear to be contemporaneous billing records. The hours spent and rates charged by the various personnel from the start of the representation through December 31, 2019 are summarized in the chart below.

| Name | Position | Year of Law School Graduation | Hours | Hourly Rate | Total |
|------|----------|-------------------------------|-------|-------------|-------|
| Yetta G. Kurland | Senior Partner | 1997 | 556.95 | $695 | $387,080.25 |
| Erica T. Healey-Kagan | Junior Partner | 2008 | 286.45 | $650 | $186,192.50 |
| Erica T. Healey-Kagan | Counsel | 2008 | 39.35 | $625 | $24,593.75 |
| Kathleen B. Cullum | Junior Associate | 2016 | 182.15 | $450 | $81,967.50 |
| Kathleen B. Cullum | Law Clerk | 2016 | 110.85 | $325 | $36,026.25 |
| Brian A. Jasinski | Junior Associate | 2015 | 18.05 | $450 | $8,122.50 |
| Brian A. Jasinski | Law Clerk | 2015 | 40.75 | $325 | $13,243.75 |

---

[4] Various Law Clerks worked on this matter including Brian Jasinski, Jason Mohabir, Michalina Shuter, and Samantha Weiss. A Junior Associate named Eric Langer worked on the matter, as did a legal assistant named Paul Newell. The Law Clerk rates are $325 per hour, the legal assistant rate is $175 per hour.

| Eric J. Lanter | Junior Associate | 2014 | 1.85 | $450 | $832.50 |
|---|---|---|---|---|---|
| Jason Mohabir | Law Clerk | 2014 | 17.70 | $325 | $5,752.50 |
| Michalina N. Shuter | Law Clerk | 2014 | 23.95 | $325 | $7,783.75 |
| Samantha Weiss | Law Clerk | 2016 | 5.35 | $325 | $1,738.75 |
| Paul D. Newell | Legal Secretary | Expected 2021 | 0.75 | $175 | $131.25 |
| **TOTAL ATTORNEYS' FEES** | | | | | **$753,465.25** |
| | | | | | |
| **TOTAL EXPENSES AND COSTS** | | | | | **$17,969.93** |

Plaintiff attached a copy of an invoice reflecting the hours spent on the fee application and the costs associated therewith to the reply brief.  No affidavit was provided to introduce that invoice.  Plaintiff Torres also submitted a declaration in support of the motion stating that she signed an engagement letter with the Kurland Group agreeing to the hourly rates set forth in the above-chart.  She states that she believed these rates to be reasonable and agreed to pay them if she did not prevail in this action.  The actual engagement letter was not provided to the Court.

## LEGAL STANDARD

A district court exercises "considerable discretion" in awarding attorneys' fees.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *accord Millea v. Metro-North R. R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011).  "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable."  *TufAmerica Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2016 WL 1029553, at *3 (S.D.N.Y. Mar. 9, 2016), *reconsideration granted in part*, No. 12-cv-3529 (AJN), 2016 WL 3866578 (S.D.N.Y. July 12, 2016), *and on reconsideration in part*, No. 12-cv-3529 (AJN), 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

Attorneys' fees are awarded by determining a presumptively reasonable fee, or a "lodestar," reached by multiplying a reasonable hourly rate by the number of hours reasonably expended. *TufAmerica Inc.*, 2016 WL 1029553, at *3 (citing *Millea*, 658 F.3d at 166); *see also Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011).  When evaluating hourly rates, the Court looks at "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  *Bergerson,* 652 F.3d at 289 (internal citations and quotation marks omitted).  The Second Circuit's "forum rule generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* at 290 (internal citation and quotation marks omitted); *see also TufAmerica Inc.*, 2016 WL 1029553, at *5 (the "rate must be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").  Courts in this District also have recognized that an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of" a reasonable hourly rate.  *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99-cv-0962 (RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006).  Finally, the Court may adjust base hourly rates to account for case-specific variables. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 183-184.

When evaluating hours expended, the Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *Haley v.* Pataki, 106 F.3d 478, 484 (2d Cir. 1997) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)).  In determining whether hours are excessive, "the critical inquiry is whether, at the time the work was performed, a reasonable attorney would

have engaged in similar time expenditures." *Samms v. Abrams*, 198 F. Supp. 3d 311, 322

(S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  "Hours that are

excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such

surplusage, the court has discretion simply to deduct a reasonable percentage of the number of

hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St.,*

*Ltd*., 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *accord*

*Alicea v. City of New York,* 272 F. Supp. 3d 603, 608-09 (S.D.N.Y. 2017); *TufAmerica Inc.*, 2016

WL 1029553, at *3.

The Court also looks at the nature of the legal matter and reason for the fee award in

considering what is a reasonable rate and reasonable time spent on a matter.  Complex cases

requiring particular attorney skills and experience may command higher attorney rates, as may

cases requiring retention of a firm with the resources needed to prosecute a case effectively.

*See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 184.

## DISCUSSION

Defendant contends that the hourly rates sought are higher than those awarded by

Courts in this District for similar types of civil rights cases against municipalities and that the

hours charged are excessive.  I address the rates first and then the hours.

### 1.  *Hourly Rates*

The party seeking fees bears the burden of demonstrating that its counsel's rates are

reasonable.  *See Blum*, 465 U.S. at 895 n.11; *accord Reiter v. Metro. Transp. Auth. of State of*

*New York*, No. 01-cv-2762 (GWG), 2007 WL 2775144, at *4 (S.D.N.Y. Sept. 25, 2007).  This

means that the fee applicant must produce evidence, in addition to the attorneys' own

affidavits, that the rates are consistent with prevailing rates in the District for lawyers of comparable skill, experience and reputation. *See Blum*, 465 U.S. at 895 n.11. The Court also is mindful that when the attorneys' fees are sought from a public entity, any fee awarded is paid by the local taxpayers and impacts the amount of money available for other public programs and services. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 524, 559 (2010).

In this case, the City argues that Ms. Kurland's rate should be reduced from $695 to $450 per hour; that Ms. Healey-Kagan's rate should be reduced from $650/625 to $350 per hour; that Junior Associate rates should be reduced from $450 to $200 per hour; and that Law Clerk/paralegal rates should be reduced from $325 to $100 per hour.

When evaluating the appropriate fee, the Court considers the time and labor required, the novelty and difficulty of the legal and factual issues in the case, the skills demonstrated by counsel during the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or circumstances, the amount involved and the results obtained, the experience, reputation and ability of the lawyers, the "undesirability" of the case, the nature and length of the professional relationship, and awards in similar cases. *Williams v. Metro-North R.R. Co.*, No. 17-cv-3847 (JGK) (KHP), 2018 WL 3370678, at *5 (S.D.N.Y. June 28, 2018), *report and recommendation adopted*, No. 17-cv-3847 (JGK), 2018 WL 3368713 S.D.N.Y. July 10, 2018). This case at its core was a straightforward employment discrimination case. Plaintiff's counsel was a zealous advocate for their client and demonstrated a satisfactory level of competence and knowledge of the facts. While the Kurland Group specializes in civil rights litigation, it does not have the reputation or experience of other Plaintiffs'-side employment firms that have commanded and been awarded high hourly rates. *See, e.g.*, *Powell v. Metro*

*One Loss Prevention Servs. Grp.*, No. 12-cv-4221 (LAP) (DF), 2015 WL 9287121, at *2-3 (S.D.N.Y. Feb. 5, 2015), *adopted by* 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015) (awarding Debra Raskin, then of Vladeck, Waldman, Elias & Engelhard, P.C., a well-known and highly regarded firm, a rate of $650 per hour in light of, among other things, her 35 years of experience);[5] *Metro-North R.R. Co.*, 2018 WL 3370678, at *8 (awarding Outten & Golden senior partners $800 per hour where there were other decisions that had found the rates reasonable, the specific features of the case, and evidence that clients paid those rates).

Notably, Ms. Kurland does not provide an affidavit stating that the rates she proposes are her customary billing rates. While Plaintiff apparently signed an engagement letter stating that she would pay the proposed rates, the engagement letter has not been provided. Nor is there any evidence that any client of the Kurland Group has ever paid the proposed rates. Nor is there any evidence that a Court has ever approved or awarded the Kurland Group the rates proposed in a similar case. In fact, in a recent case, a court awarded Ms. Healey-Kagan a rate of $350 per hour, although this rate was for a period of time when Ms. Healey-Kagan was less senior and/or had not been promoted to Junior Partner. *See Local 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 392 F. Supp. 3d 361, 380 (S.D.N.Y. 2019). In that same case, the Court found that an hourly rate of $600 for Ms. Kurland was reasonable. *Id.*

In similar, single plaintiff civil rights cases, Courts in this District have awarded attorneys with Ms. Kurland's experience rates in the range of $400-500 per hour, although, as noted above, in some cases, Courts in the District have awarded rates as high as $800 for partners.

---

[5] Given that *Powell* was decided in 2015, this Court recognizes that a court would likely approve a higher rate today to take into account inflation/cost of living increases.

*See, e.g.*, *Lilly v. City of New York*, 934 F.3d 222, 231 (2d Cir. 2019) (affirming district court award of $450 per hour rate to attorney in garden variety civil rights case); *Cocuzza v. Rockland Cty.*, No. 17-cv-8217 (KMK) (PED), 2019 U.S. Dist. LEXIS 194993, at *11-14 (S.D.N.Y. Nov. 7, 2019) (in civil rights case, finding that $400 per hour rate was appropriate); *Charles v. City of New York*, No. 13-cv-3547 (PAE), 2014 U.S. Dist. LEXIS 124056, at *8-10 (S.D.N.Y. Sept. 4, 2014) (awarding $450 to attorney with 25 years experience in civil rights litigation); *Spencer v. City of New York*, No. 06-cv-2852 (KMW), 2013 U.S. Dist. LEXIS 161693, at *16-17 (S.D.N.Y. Nov. 12, 2013) (collecting cases).

Typical rates are far less for Junior Associates—more in the range of $200 to $350 per hour depending on experience.  *See, e.g.*, *Andrews v. City of New York*, 118 F. Supp. 3d 630, 641 (S.D.N.Y. 2015) (finding that $200 per hour was reasonable rate for Junior Associate with two years' experience at an employment firm); *DeCastro v. City of New York*, No. 16-cv-3850 (RA), 2017 WL 4386372, at 6 (S.D.N.Y. Sept. 30, 2017) ("Courts in this district generally award fees at hourly rates between $150 and $275 for Junior Associates at law firms specializing in civil rights.").  Rates for non-lawyers, *i.e.* paralegals and recent law graduates who have not been admitted to the bar (often referred to as Law Clerks), are less still—below $200 per hour. *Travel Leaders Grp., LLC*, No. 19-cv-1595 (GBD) (JLC), 2019 U.S. Dist. LEXIS 210850, at *41 (awarding $100 per hour for a paralegal); *Andrews*, 118 F. Supp. 3d at *642-643 (awarding $100 per hour for two non-lawyers, specializing in research, "at a paralegal rate" in employment class action).

None of the other factors courts consider when determining a reasonable rate weigh in favor of awarding the rates sought by the Kurland Group, apart from the fact that it secured a

good result for Ms. Torres.  This was not an "undesirable" case—other attorneys very may well have taken it.  There were no pressing time limitations or circumstances commanding higher rates.

In sum, in light of the dearth of information provided to the Court about the experience of the attorneys who worked on this case (apart from Ms. Kurland and Ms. Healy-Kagan), the lack of evidence showing that the rates sought are regularly charged to or paid by clients of the Kurland Group, the relatively simple nature of the claims in this case, and the prevailing rates in this District for similar cases against the City, and other factors cited above, I find the following hourly rates are appropriate:  $600 for Ms. Kurland, as this rate was recently found to be reasonable for her experience; $400 for Ms. Healy-Kagan to take into account her seniority and promotion to Junior Partner at the tail end of this case; $250 for Junior Associates; and $100 for Law Clerks and paralegals.

### 2. Hours

Turning to the hours worked, the Court notes that Plaintiff's counsel does not appear to have reviewed their time records before submitting them to the Court.  Normally, attorneys seeking an award of fees remove time from attorneys or staff that spent *di minimis* time on a matter and remove entries that they know the Court will deem to be redundant or unnecessary based on applicable case law.  Plaintiff's counsel did not do that.  For example, they include time of Associate Eric Lanter who worked less than two hours on this matter, Law Clerk Samantha Weiss who worked only 5.35 hours on this matter, and Legal Secretary Paul Newell who worked less than an hour on the case.  Similarly, there are entries for travel time that have not been discounted and that do not explain the nature of the travel and entries for attorney

time that appears to be administrative in nature, such as "organize file" and "calendar upcoming dates," that should have been performed by a secretary or paralegal.  It is appropriate to reduce hours for these types of entries.  *See Seong Soo Ham v. Sushi Maru Express Corp.*, 736 Fed. App'x 19, 20 (2d Cir. 2018) (District Court within its discretion to reduce attorneys' fees when failing to discount for travel and when billing attorney time for work that could be performed by a secretary).  Similarly, there appear to be duplicate billing entries.  For example, on July 10, 2018, there are two identical entries for KC-J revising a class certification letter.

Plaintiff also has included hours for time that is not compensable insofar as it concerns matters ancillary to the filing of the EEOC charge and this lawsuit.  *See Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234, 242 (1985) (recognizing time spent years before the complaint was filed are not fairly deemed to have been expended on the litigation).  For example, Ms. Kurland and Ms. Healey-Kagan spent approximately 42 hours on a FOIL request prior to bringing this litigation.  This information was not needed in connection with the EEOC charge and could have been sought in discovery had the class claims been permitted to proceed.  The City also argues that Plaintiff's time spent filing a Notice of Claim was not necessary to this litigation.  However, there is a Notice of Claim requirement for bringing certain claims against the City.  Therefore, I find that at least some of this time is compensable.  However, the hours spent on preparing the Notice of Claim were clearly excessive as there was no need to spend more than a few hours on it.  According, I will reduce the hours to account for time not fairly attributable to this litigation. *See Suggs v. Crosslands Transp., Inc.*, No. 13-cv-6731 (ARR) (MDG), 2015 U.S. Dist. LEXIS 39629, at *27-28 (E.D.N.Y. Mar. 4, 2015); *Koon Chun Hing Keey Soy & Sauce Factory,*

*Ltd. v. Kun Fung USA Trading Co.*, No. 07-cv-2568 (JG), 2012 U.S. Dist. LEXIS 68117, at *39-40

(E.D.N.Y. Jan. 20, 2012).

In addition to the above-referenced issues, many of the time entries are vague. For

example, multiple entries merely state tasks in the most general manner such as, "e-mail

regarding matter," "telephone call regarding matter," and "draft letter to opposing counsel." It

is impossible to judge the reasonableness of the time spent on these tasks if the topic of the

work is not disclosed or more information provided justifying the time spent. Courts routinely

reduce time in fee applications for such vague time entries. *See Fleet St.*, 148 F.3d at 172;

*Ravina v. Columbia Univ.*, 2020 WL 1080780, at *9 (S.D.N.Y. Mar. 6, 2020); *Tatum v. City of New

York*, No. 06-cv-4290 (PGG) (GWG), 2010 WL 334975, at *7 (S.D.N.Y. Jan. 28, 2010); *Suchodolski

Assoc. v. Cardell Fin. Corp.*, No. 03-cv-4148 (WHP), 2008 U.S. Dist. LEXIS 106912, at *5-6

(S.D.N.Y. Dec. 19, 2008).

The time records do not appear to be contemporaneous, which explains the vagueness.

It is difficult to remember weeks, months, or a year after the fact the precise amount of time

spent on a task or the particular nature of the task. This significantly undermines the Court's

confidence in the accuracy of the purported time spent. *See King v. JCS Ener, Inc.*, 325 F. Supp.

2d 162, 166 (E.D.N.Y. 2004) (contemporaneous records needed to appropriately audit hours).

The billing records also reflect numerous internal conferences. For example, according

to the December 2019 invoice, there were approximately 112 internal strategy meetings.

Courts routinely reduce fee requests for excessive internal conferences. Given this Court's

knowledge of corporate scrutiny of outside counsel fees and commonplace rules prohibiting

billing for internal conferences, it is unlikely counsel would be able to bill a client for the

quantity of internal conferences reflected on the invoice provided to the Court.  *See Star Ins. Co. v. A&J Constr. Of New York, Inc.*, No. 15-cv-8798 (CS) (JCM), 2018 WL 6177857, at *6 (S.D.N.Y. Nov. 26, 2018); *Metro-North R.R. Co.*, 2018 WL 3370678 at *10 (S.D.N.Y. June 28, 2018); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. Of Pomona*, 188 F. Supp. 3d 333, 342 (S.D.N.Y. 2016); *see also Cooper v. Sunshine Recoveries, Inc.*, No. 00-cv-8898 (LTS) (JCF), 2001 WL 740765, at *3-4 (S.D.N.Y. June 27, 2001) (reducing hours for excessive interoffice communications); *Pascuiti v. New York Yankees*, 108 F. Supp. 2d 258, 271 (S.D.N.Y. 2000) (stating that time spent on internal conferences is "harder to verify and therefore more likely to be excessive").  Counsel also spent an inordinate amount of time arguing about the settlement agreement and language in the agreement.  This was unnecessary.

This Court has broad discretion to make across the board reductions to attorneys' fees applications.  *See, e.g.*, *Alicea*, 272 F. Supp. 3d at 612 (where plaintiff's counsel engaged in numerous instances of excessive and unjustified billing, the court found that "[a] fifty percent cut in this case is warranted"); *Hines v. 1025 Fifth Ave. Inc.*, No. 14-cv-3661 (SAS) 2015 WL 4006126, at *7 (S.D.N.Y. June 30, 2015) ("I find that a fifty (50) percent reduction in the total number of hours expended is necessary to correct for excessive billing, over litigation, and counsel's utter failure to exercise billing judgment.").  To account for all of the above issues, I am reducing the total expended hours by 25%.

Finally, the case appears to have been staffed with the most experienced attorneys performing the lion's share of the work on the case.  This is not the way litigation should be staffed.  Rather, work should be delegated to the most junior person able to perform the task under overall supervision by the lead attorney on the case.  Here, there were nine attorneys

who worked on the case, seven of whom were recent law school graduates or Junior

Associates.  These attorneys could have performed many of the tasks performed by Ms.

Kurland and Ms. Healy-Kagan.  For example, junior attorneys could have prepared subpoenas,

drafted deposition questions, corresponded with process servers, conducted legal research,

corresponded with court reporters, prepared and submitted FOIL requests, and mailed and

served discovery.  Instead, there are multiple entries for Ms. Kurland and Ms. Healy-Kagan

doing these tasks.  This was inappropriate.  *See Pig Newton, Inc. v. The Bd. Of Dirs. of The*

*Motion Picture Indus. Pension Plan*, No. 13-cv-7312 (KPF), 2016 WL 796840, at *7 (S.D.N.Y. Feb.

24, 2016) (reducing awarded attorneys' fees premised, in part, on the "'top-heavy' nature of

the legal services provided").  Where work is not properly delegated, courts reduce the rate for

such work to the rate for a paralegal or junior lawyer. *See, e.g.*, *Suggs*, 2015 U.S. Dist. LEXIS

39629 at *27-28 (reducing rate for administrative tasks conducted by attorney, including filing

and service of process).

Here, the two most senior attorneys expended approximately 69% of the hours on the case,

whereas the Junior Associates expended only approximately 16% of the hours on the case and

Law Clerks expended the remaining hours on the case.  In a more efficient and typical staffing

arrangement, the two senior attorneys should have spent no more than 30% of the hours on

the case.  To account for inefficient staffing, I am reallocating the compensable hours to

account for a more efficient staffing model such that 15% of the hours will be compensated at

the $100 per hour rate; 55% of the hours will be compensated at the $250 per hour rate;  15%

16

of the hours will be compensated at the $375 rate; and 15% of the hours will be compensated at the $600 rate.  This results in a fee award of $289,859.[6]

### 3. Costs

"Courts generally award reasonable out-of-pocket costs incurred by attorneys and charged to their clients."  *Trs. of the Hollow Metal Pension Fund v. Morris Fine Furniture Work Shop, Inc.*, No. 16-cv-9480 (LAK) (KHP), 2019 U.S. Dist. LEXIS 102715, at *30 (S.D.N.Y. Mar. 15, 2019) (citing *Poulos v. City of New York*, No. 14-cv-3023 (LTS) (BCM), 2018 U.S. Dist. LEXIS 118364, at *14 (S.D.N.Y. July 13, 2018)).

Plaintiff seeks $650 in travel costs which are not explained insofar as everything in this case took place in Manhattan where counsel can walk or take public transportation.  Plaintiff provided no detail as to who traveled or where or why or the time of travel.  It is impossible to determine whether these costs are appropriate.  The same is true for $87.51 in meals—no detail has been provided about who ate the meal or why it would be chargeable to Plaintiff.[7]  Similarly, no explanation is provided for why Plaintiff spent $32.65 on deposition memory storage or $50.54 for Federal Express when cheaper options were available.  Here again, no receipts were provided for either expense.  Accordingly, I find that the costs awarded should be reduced by $820.70.  This reduces compensable costs to $17,193.32, which covers electronic research charges, court filing fees, transcript costs, and printing and copying costs.

---

[6] The Court has rounded this number to the nearest dollar.
[7] In the reply brief, the Kurland Group explains that attorneys are reimbursed for travel and meals when working late.  However, without receipts or additional information, the Court still cannot assess whether the charges were appropriate.

## CONCLUSION

Accordingly, I find that Plaintiff is entitled to attorneys' fees in the amount of $289,859 and costs in the amount of $17,193.32.  The attorneys' fees are computed as follows:  1293.65 hours x .75 = 970.24 hours.  To account for the inefficient staffing, 55% of the 970.24 hours (533.23 hours) are compensated at the rate of $250 per hour; 15% (145.53 hours) are compensated at $600 per hour; 15% (145.53 hours) are compensated at $375 per hour; and 15% (145.53 hours) are compensated at $100 per hour.

Dated: May 18, 2020
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge